ARBED, S.A.; COCKCRILL-SAMBRE, S.A.; KLOCKNER-WERKE A.G.; N.V. SIDMAR; and THYSSEN A.G., PLAINTIFFS, and SACILOR, ACIERIES ET LAMINOIRS DE LORRAINE; SOCIETE LORRAINE DE LAMINAGE CONTINU; SOCIETE LORRAINE ET MERIDTONALE DE LAMINAGE CONTINU; and AKTIENGESELLSCHAFT DER DILLINGER HUETTENWERKE, PLAINTIFFS-INTERVENORS, v. UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF COMMERCE; MALCOLM BALDRIDGE, SECRETARY OF COMMERCE; LIONEL H. OLMER, UNDER SECRETARY FOR INTERNATIONAL TRADE; LAWRENCE J. BRADY, ASSISISTANT SECRETARY FOR IMPORT ADMINISTRATION; and GARY N. HORLICK, DEPUTY ASSISTANT SECRETARY FOR IMPORT ADMINISTRATION, DEFENDANTS, and ARMCO, INC.; and BETHLEHEM STEEL CORPORATION, DEFENDANTS-INTERVENORS

Court No. 82-9-01240

Before WATSON, *Judge.*

(Decided September 22, 1982)

*Graubard, Moskovitz, McGoldrick, Dannet & Horowitz (Michael H. Greenberg* and *John A. Young* of counsel) for plaintiffs *Arbed S.A.; Cockerill-Sambre S.A.; N.V. Sidmar;* and *Klockner-Werke A.G.*

*Graubard Moskovitz & McCauley (Alfred R. McCauley* of counsel) for plaintiff *Thyssen A.G.*

*Windels, Marx, Davies & Ives (Pierre F. deRavel d'Esclapon* of counsel) for plaintiffs, *Sacilor, Acieries et Laminoirs de Lorraine; Societe Lorraine de Laminage Continu; Societe Lorraine et Meridionale de Laminage Continu,* and *Aktiengesellschaft der Dillinger Heuttenwerke.*

*J. Paul McGrath,* Assistant Attorney General *(David M. Cohen,* Branch Director, Commercial Litigation Branch, *Velta A. Melnbrencis,* Commercial Litigation Branch on the brief) for defendants *United States,* et al.

Law Offices of *Eugene L. Stewart (Eugene L. Stewart* and *Terence P. Stewart* of counsel) for defendants-intervenors *Armco, Inc.* and *Bethlehem Steel Corporation.*

*Cravath, Swaine & Moore (Joseph R. Sahid* of counsel) for *amici curiae Republic Steel Corporation, Inland Steel Company, Jones & Laughlin Steel Inc., National Steel Corporation* and *Cyclops Corporation.*

WATSON, *Judge:* Plaintiffs, who are foreign steel producers, seek a preliminary injunction to prevent the disclosure of certain confidential business information which they have submitted to the Department of Commerce (DOC) in response to questionnaires used in antidumping investigations.

The DOC proposes to release the information in accordance with Section 777(c) of the Tariff Act of 1930 (19 U.S.C. § 1677f(c)) [1] and in

---

[1] (c) Limited disclosure of certain confidential information under protective order.
   (1) Disclosure by administering authority or commission.

response to applications for disclosure made by special counsel for Bethlehem Steel Corporation and Armco, Inc. These corporations were among the domestic steel producers whose petitions initiated the antidumping investigations.

Plaintiffs challenge the adequacy of the applications for disclosure, the sufficiency of the need they express and, by extension, the correctness of the decision to disclose some of the information.[2] They allege that disclosure will irreparably injure them and, additionally, that considerations of the balance of hardship to the parties and the public interest combine to justify injunctive relief.

This dispute is immediately distinguishable from an earlier case involving the same information and the same parties, in which a clear violation of the statutory procedures for release of confidential information led to the granting of injunctive relief. *Sacilor, Acieries et Laminoirs de Lorraine* v. *United States,* 3 CIT 191 (1982). Here the procedures have been followed and the plaintiffs are focusing on the subtler question of whether the proposed disclosure is somehow arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. These are the criteria derived from 5 U.S.C. § 706 which are applicable to this action by virtue of 28 U.S.C. § 2640(d).

In essence, the need stated by the applicants for disclosure is the general need to examine, analyze and comment on the data submitted by plaintiffs so that the views of the domestic industry may be fully presented on the accuracy of the data and the calculations in which they were utilized.

These reasons are stated in various ways at pages 16 through 19 of the application for disclosure. A good example is cost of production information, which assumes central importance when cost of production replaces home market value as the starting point for determining whether the product was sold at less than fair value in the United States. The non-confidential submissions [3] provide information as to the identity of specific categories involved in the cost of production such as materials, labor, factory overhead, financing as well as selling, general and administrative expenses. For example, on the subject of materials the non-confidential summary of plaintiff Arbed, S.A. shows ten types of ore as well as separate entries for sixteen other ingredients.[4] Similarly, the non-confi-

---

(A) In general. Upon receipt of an application, which describes with particularity the information requested and sets forth the reasons for the request, the administering authority and the Commission may make confidential information submitted by any other party to the investigation available under a protective order described in subparagraph (B).

(B) Protective order. The protective order under which information is made available shall contain such requirements as the administering authority or the Commission may determine by regulation to be appropriate. The administering authority and the Commission shall provide by regulation for such sanctions as the administering authority and the Commission determine to be appropriate, including disbarment from practice before the agency.

[2] The DOC does not propose to release certain of the exhibits, the computer tapes, printouts derived from the tapes and names of customers.

[3] The statute, at 19 U.S.C. § 1677f(b)(1) permits the agencies in these investigations to require the parallel submission of a non-confidential summary "in sufficient detail to permit a reasonable understanding of the substance of the information submitted in confidence. . . ."

[4] Defendant-Intervenors Bethlehem and Armco's Exhibit 5 at D page 2.

'dential response of plaintiff-intervenor Dillinger shows entries covering eleven types of ingredients.[5] These non-confidential summaries do not provide actual costs and amounts.

The application for disclosure speaks of cost of production information as necessary to the preparation of comment by counsel on the DOC's computation of constructed value, essential to adequate and comprehensive preparation and independent review by the representatives of the domestic industry. Applicants state a need for details of selling, general and administrative expenses in order to determine the amounts of proper adjustments to cost of production and to evaluate the amounts for commercial reasonableness. Applicants also stated a need for information on yield and capacity utilization rates, profits and other cost information in order to allow them to develop the full cost of production, to compare that cost with the home market prices and then to compute the constructed value in the manner provided by the statute, all of this with the objective of meaningful participation in the investigation by the domestic industry.

The DOC's decision to disclose is expressed in the letters of September 7, 1982 from the Director of the Office of Investigations to counsel for the various plaintiffs and is further explained in an undated memorandum from the Director to the Deputy Assistant Secretary for Import Administration.[6] As to those documents which the DOC is prepared to release it recites as follows:

> We believe petitioners have a right to make informed comments regarding these proceedings. The use of non-confidential summaries of indices or bracketed amounts in place of actual data on prices, expenses, and cost precludes meaningful analysis of certain submitted data. We believe that petitioners should be allowed to comment on a broader range of pertinent issues rather than be limited to comments regarding only the methodology used by the Department in calculating margins. We have determined that the need of petitioners to have access to non-summarized material, in order to make informed comments regarding these proceedings, outweighs the need for continued confidentiality of this material.

The letters express a contrary conclusion with respect to certain other exhibits, computer tapes, printouts and names of customers. The underlying memorandum from the Director of the Office of Investigations draws a distinction with respect to computer printouts as follows:

> Such disclosure would serve no other purpose than to afford counsel an opportunity to duplicate the Department's function and role in these investigations. The purpose of disclosure in these circumstances is to afford counsel an opportunity to ana-

---

[5] Exhibit A, Annex: D.1.1.
[6] Exhibit C to Affidavit of Pierre F. deRavel d'Esclapon and Exhibits F-1 and F-2 to Supplemental Affidavit of John A. Young (filed September 13, 1982)

lyze whether adjustments made by the Department to arrive at price comparisons are appropriate, not to afford an opportunity to review calculations.

Some of plaintiffs have argued that the DOC expressly did not use their information in the preliminary determinations and that applicants therefore have no legitimate interest in that material. This point would be well taken if this dispute was tied only to the preliminary determination. However, this material and supplemental material in some cases, remains a possible source of information for the final determination and for that reason its disclosure cannot be ruled out for demonstrable lack of relevance.

The most troublesome issue for the Court has been the question raised by plaintiffs when they assert that the standard used to justify disclosure is virtually meaningless because it can always be satisfied by any party to these investigations. If anyone concerned with the outcome of these investigations can assert the general need to make informed comment or meaningful analysis, are there any real limits to disclosure?

In the *Sacilor* opinion the Court thought that it saw some indication of the limits of disclosure when it stated that the agency should not confuse the role and need of a party to an administrative investigation with that of a litigant in a court of law and further, that disclosure should not reflect an abdication of the investigative duties of the agency. This suggested the possibility of narrower access in administrative investigations because a party was not primarily responsible for the accumulation and analysis of the material needed to reach the objective of the proceeding. As it turns out, now that the Court is faced with a concrete dispute involving a rather general need, the reasoning based on distinctions between investigation and litigation begins to break down, and the decision of the agency accepting the general need to make informed comment cannot quite be called an abdication of investigative duty. The Court cannot reach a standard in which general informed comment is never a justifiable contribution to the investigation.

On the one hand we have the natural, inchoate feeling that the statutory mechanism for the release of confidential information should ideally depend on the making of sharp distinctions and precise demonstrations of need, lest it becomes a meaningless ritual.

On the other hand, there is the unavoidable fact that the law permits disclosure under a protective order and that the legislative history saw this, to a significant extent, as an important corrective to a situation in which petitioners did not have access to information presented by the exporters and foreign manufacturers. S. Rep. No. 249, 96th Cong. 1st Sess. 100 (1979). To the obvious rejoinder that this still does not provide a mandate for limitless and unreasonable disclosure the Court must respond that it does not sanction unfettered discretion in these matters. At the same time it must

express a present inability to discern or articulate a more stringent working standard which can be applied in the present circumstances.

The more focused showing of specific need required in court actions in order to discover confidential information seems inapplicable here because it presumes a level of specific knowledge which it may be unreasonable to attribute to a party in these investigations. It also overlooks that aspect of the agency decision which suggests a distinction between pure duplication of its functions and that comment and analysis which will contribute to the objectives of the investigation more than it will detract from the confidentiality of information.

The Court has not been persuaded that the general need to subject certain underlying data to critical scrutiny is unreasonable, or that the verification of this data by the DOC was intended to be the limit of its exposure in the investigation.

In this respect it appears that the investigating agency has to be given some leeway in those areas in which it has a reasonable expectation that the comments and analyses of the parties will be helpful. The Court sees the operation of this discretion as one in which the central concern is not strictly what is needed by the party in order to achieve the fullest possible participation. What is central is that the needs of a party conform to, or reasonably complement, the need of the agency to be as fully informed as possible in arriving at the objectives of the investigation. If this standard generates a decision that disclosure of confidential information will or will not be made, it should not be disturbed unless it either effectively disables the party seeking disclosure or grievously underestimates a compelling need for confidentiality.

These considerations lead to what is essentially the acceptance of a range of discretion in the investigating agency to determine the degree of exposure to confidential information consistent with the objectives of the investigation and the dictates of the law. The most that can be said is that while the general reasons found sufficient here may not *compel* disclosure, they do not fall outside the realm of the agency discretion to *grant* disclosure.

Because we are now in the formative period of the administration and interpretation of these delicate matters, it must be noted that the Court's acceptance of this discretion cannot be stated with absolute finality. In this case it is simply satisfied that neither an abuse of discretion nor an avoidance of the law has taken place and a more refined analysis cannot be made.

Because the Court is not persuaded that a more exact standard for disclosure needs to be applied, or indeed, can be applied under this law, it does not see the likelihood of plaintiffs' success on the merits in this action. The other criteria involved in the granting of injunctive relief do not have to be addressed because, in a practical

sense, they all hinge on an evaluation of the merits and will tend to move in the same direction.

For the reasons discussed above, the Court must deny the applications for a preliminary injunction and it is so Ordered.